Not for Publication

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CLAUDIO TOMMOLILLO, LISA TOMMOLILLO, & CLASSIC AUTO REPAIRS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>COLUMBIA BANK, *et al.*,<br><br>Defendants. | Civil Action No.: 23-3140 (ES) (JRA)<br><br>OPINION |

SALAS, DISTRICT JUDGE

Plaintiffs Claudio Tommolillo, Lisa Tommolillo, and Classic Auto Repairs, LLC filed this action against Columbia Bank, the United States Small Business Administration ("SBA"), and the Administrator of the United States Small Business Administration (the "SBA Administrator"), alleging state law claims for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, equitable estoppel, and declaratory judgment. (D.E. No. 1-1 ("Amended Complaint" or "Am. Compl.")). Before the Court is a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) filed by the SBA and the SBA Administrator (collectively, the "SBA Defendants") (D.E. No. 8 ("Motion")), as well as Plaintiffs' opposition and cross-motion to transfer this matter to the Federal Court of Claims or remand to the Superior Court of New Jersey (D.E. No. 9 ("Opp.")). The Court has carefully considered the parties' submissions and decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, the SBA Defendants' motion to dismiss is **GRANTED**, and Plaintiffs' motion to remand or transfer this matter is **DENIED**.

# I.    BACKGROUND

## A.    Factual Background

Plaintiffs Claudio and Lisa Tommolillo ("Individual Plaintiffs") formed Plaintiff Classic Auto Repairs ("Classic Auto"), a former New Jersey LLC, in February 2007.  (Am. Compl. ¶ 1). On April 11, 2008, Classic Auto allegedly "executed a Promissory Note in favor of Columbia Bank," a New Jersey-based bank, which was "signed to secure a loan" for Classic Auto "in the amount of $480,000.00 (the 'SBA Loan')."  (*Id.* ¶¶ 2–3).  The SBA Loan, intended to allow the Individual Plaintiffs to purchase property at 113-117 State Street, Paterson, New Jersey (the "State Street Property") for Classic Auto, was allegedly secured by (i) mortgages on the State Street Property and on the Individual Plaintiffs' residence (134 Grove Street, Elmwood Park, NJ (the "Grove Street Property")); (ii) a Security Agreement; (iii) Uniform Commercial Code Financing Statements; (iv) a Guarantee executed by the Individual Plaintiffs; and (v) a life insurance policy for Claudio Tommolillo.  (*Id.* ¶¶ 5–6).  The SBA Loan, made from Columbia to Plaintiffs, was guaranteed by the SBA.  (*See generally* Am. Compl; *see also* Opp. at 21).

> A guaranteed loan is initiated by a Lender agreeing to make an SBA guaranteed loan to a small business and applying to SBA for SBA's guarantee under a blanket guarantee agreement (participation agreement) between SBA and the Lender.  If SBA agrees to guarantee (authorizes) a portion of the loan, the Lender funds and services the loan.  If the small business defaults on the loan, SBA's guarantee requires SBA to purchase its portion of the outstanding balance, upon demand by the Lender and subject to specific conditions.

13 C.F.R. § 120.2.

At some unspecified point, Classic Auto defaulted in making payments to Columbia on the SBA Loan, leading Columbia to file a lawsuit against Plaintiffs in the Superior Court of New Jersey as well as a foreclosure action against the Individual Plaintiffs.  (*Id.* ¶¶ 7–9).  After

mediation took place on December 12, 2012, the parties allegedly reached a settlement in the lawsuit in the Superior Court and entered into a written Settlement Agreement.  (*Id.* ¶¶ 10–11). The Agreement allegedly provided that (i) Plaintiffs "would pay $275,000 to Col[u]mbia Bank within sixty days and then pay an additional sum of $10,000 over the following ten years"; (ii) "the parties would exchange reciprocal general releases extinguishing any and all claims brought or which could have been brought in that action and the related foreclosure action"; (iii) "Columbia Bank would provide Classic Auto Repairs, Claudio Tommolillo and Lisa Tommolillo with a discharge of mortgage, return of the Promissory Note and release of the guaranties and all other assignments and collateral"; (iv) "the terms of the agreement were subject to Columbia Bank obtaining SBA approval and Mario Tommolillo (brother to Claudio Tommolillo) obtaining a mortgage commitment to purchase [the State Street Property] from Classic Auto Repairs to pay the $275,000.00 to Columbia Bank"; (v) Classic Auto would "provide any documentation or information reasonably required by the SBA"; and (vi) "counsel for the parties would execute and file a stipulation of dismissal with prejudice with the court in both actions."  (*Id.* ¶¶ 12–17).

Plaintiffs allege that Mario Tommolillo, as agreed, obtained the required mortgage commitment and purchased the State Street Property, the sale proceeds of which "were paid by Classic Auto Repairs to Columbia Bank on or about June 13 and 14, 2013 in accordance with" the Agreement, leading to the discharge of the mortgage on the State Street Property.  (*Id.* ¶¶ 18–20). Plaintiffs further allege that the discharge of the mortgage lead "Plaintiffs to believe that Columbia Bank had had some communication with the SBA regarding the original Settlement Agreement." (*Id.* ¶ 20).  However, according to Plaintiffs, although they complied with the Agreement, Columbia Bank failed to do the same, including failing to "notify the SBA of the Settlement

Agreement within a reasonable time" and failing "to obtain SBA approval of the Settlement Agreement in accordance with its terms." (*Id.* ¶¶ 21–24).

Additionally, Plaintiffs assert that "it was not until well after the Settlement Agreement was entered into that the attorney for Columbia advised that the SBA had 'additional requirements' that were not revealed during the negotiations leading to the Settlement Agreement nor were they mentioned in the Settlement Agreement document." (*Id.* ¶ 25). This, Plaintiffs state, led Columbia to propose a new post-settlement offer with different terms, including:

> a. The SBA requirements prohibited payment of the remaining $10,000 settlement amount over the agreed upon ten (10) years. Counsel for Columbia advised on June 14, 2013, six months after the Settlement Agreement was signed that the $10,000 had to be paid within a period that was not more than five (5) years, not the ten (10) years Columbia agreed to in the Settlement Agreement. While the Plaintiffs submitted an affidavit stating that this new condition was acceptable, neither Columbia Bank nor the Plaintiffs signed a revised settlement agreement.
>
> b. Further, Columbia Bank advised that the Individual Plaintiffs would have to sign another promissory note to secure the $10,000.00 instead of a confession of judgment as set forth in the Settlement Agreement, another modification of the settlement agreement which was never signed by either Columbia Bank or Plaintiffs.
>
> c. Classic Auto Repairs would need to file a final tax return and be dissolved although not mentioned by Columbia at the time of Settlement, another modification of the settlement agreement which was never signed by either Columbia Bank or Plaintiffs.
>
> d. Claudio and Lisa Tommolillo were to provide their . . . tax returns and a financial statement to Columbia Bank, also not mentioned by Columbia Bank at the time the Settlement Agreement was entered into, another modification of the settlement agreement which was never signed by either Columbia Bank or Plaintiffs.
>
> e. Columbia Bank would be required to submit an Offer in Compromise (OIC) to the SBA, but Columbia Bank refused to submit the OIC until the post-Settlement Agreement requirements which they notified the Plaintiffs about Post-Settlement, were met by Classic Auto Repair and the Tommolillos, another modification

of the settlement agreement which was never signed by either
Columbia Bank or Plaintiffs.

(*Id.* ¶ 26).  Plaintiffs assert that they accepted the new terms, but that the terms were never formally

memorialized by Columbia.  (*Id.* ¶ 27).

Next, Plaintiffs allege that on June 14, 2013, "Columbia Bank advised that it would not

agree to discharge of the note, release of guarantees and other assignments of collateral[,] or submit

the OIC to the SBA for approval of the Settlement Agreement until the post-closing requirements

were met by Classic Auto Repair and the Tommolillos."  (*Id.* ¶ 28).  Plaintiffs assert that the

Tommolillos "agreed to pay the $10,000 over five years (and made specific requests as to where

the money should be sent), filed the 2010 and 2011 tax returns for Classic Auto Repairs, dissolved

Classic Auto Repairs and provided their personal tax returns for 2010 and 2011 along with a

financial statement."  (*Id.* ¶ 29).  However, Plaintiffs allege that Columbia still failed to

memorialize the new settlement terms in writing, and additionally "failed to request SBA approval

of the original Settlement Agreement and failed to provide an OIC to SBA in a timely manner."

(*Id.* ¶¶ 30–31).  On July 10, 2015, Columbia allegedly told "the Individual Plaintiffs that they did

not submit the OIC to the SBA but returned all of their documents on the matter to the SBA without

the OIC."  (*Id.* ¶ 32).  Columbia allegedly failed to tell Plaintiffs or their counsel that they had not

requested SBA consideration of the original Settlement Agreement or the new terms.  (*Id.* ¶ 33).

Plaintiffs assert that they on their own repeatedly "contacted the SBA, Department of the

Treasury[,] and collection agencies requesting the SBA approval of the Settlement Agreement."

(*Id.* ¶ 34).  Plaintiffs allege that on October 9, 2018, an SBA employee named Bob Davis "advised

Plaintiff[s'] representatives that Columbia Bank had failed to submit the required OIC to SBA and

had failed to obtain approval of the Settlement Agreement terms."  (*Id.* ¶ 35).  On April 30, 2019,

Plaintiffs allege that their attorney "contacted Columbia Bank's attorney to obtain the OIC letter

5

signed by a Columbia Bank representative that Columbia never provided to the SBA . . . so that Plaintiff's attorney could submit it to the SBA directly." (*Id.* ¶¶ 38–39).  Plaintiffs allege that the OIC Letter was not sent to them until October 20, 2020—nearly ten years after the initial Settlement Agreement.  (*Id.* ¶ 40).  Plaintiffs contend that they submitted the OIC to the SBA on January 12, 2021, and that the SBA "declined the OIC and, effectively, the Settlement Agreement, on February 4, 2021." (*Id.* ¶¶ 41–42).  Finally, on September 13, 2022, Lisa Tommolillo allegedly reached out to the SBA and was informed by employee Debbie Lester that "to her knowledge, nothing was ever submitted by Columbia Bank to the SBA regarding the original Settlement Agreement." (*Id.* ¶ 43).

### B.  Procedural History

On October 14, 2022, Plaintiffs filed suit against Columbia Bank in the Superior Court of New Jersey, Chancery Division, Bergen County.  (*See* D.E. No. 1 at 4).  On March 16, 2023, Plaintiffs filed the Amended Complaint in the state court action, which added the SBA and the SBA Administrator[1] as defendants.  (*See id.*; Am. Compl.).  The Amended Complaint alleges claims of (i) breach of contract against Columbia Bank (Count I); (ii) breach of the implied

---

[1]    While the Amended Complaint does not explicitly so state, it is clear from context that this action is brought against the SBA Administrator in her official, rather than individual, capacity. *See Craig v. Salamone*, No. 98-3695, 1999 WL 213368, at *4 (E.D. Pa. Apr. 8, 1999) ("When the complaint is unclear, a district court should 'look to the complaints and the course of proceedings' to determine in what capacity the defendant is being sued." (quoting *Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990), *aff'd*, 502 U.S. 21 (1991))).  "Important factors to consider" in analyzing whether a suit is brought against someone in their individual or official capacity "include the allegations in the complaint, the nature of the relief sought, and affirmative defenses raised." *Id.* at 13.  Here, the Amended Complaint's caption does not identify the SBA Administrator by name, only by her official position, and the Amended Complaint does not attribute any individual actions to the SBA Administrator, leading this Court to conclude that the suit is against the SBA Administrator in her official capacity. *Cf. Lancaster v. Piccoli*, No. 20-1995, 2023 WL 3916295, at *4 (D.N.J. June 9, 2023) (finding the fact that the defendant was "referred to with his official title in the amended complaint" as a factor weighing in favor of construing the suit as an official-capacity suit); *Williams v. Papi*, 30 F. Supp. 3d 306, 315 (M.D. Pa. 2014) (finding a suit to be an *individual*-capacity suit where "the gist of Plaintiff's Complaint is not some general Complaint against the Township or Police Department (neither of which is named as a Defendant), but simply against [the defendant] himself").  And nowhere in their briefing do Plaintiffs allege they have sued the SBA Administrator in her individual capacity.  Thus, the Court construes the claims against the SBA Administrator as official-capacity claims.

covenant of good faith and fair dealing against Columbia Bank (Count II); (iii) unjust enrichment against Columbia Bank (Count III); (iv) "equitable estoppel" against Columbia Bank (Count IV); (v) breach of the implied covenant of good faith and fair dealing against the SBA (Count V); (vi) unjust enrichment against the SBA (Count VI); (vii) "equitable estoppel" against the SBA (Count VII); and (viii) "declaratory judgment" against the SBA (Count VIII).  (Am. Compl.).  The SBA Defendants removed the action to this Court on June 7, 2023.  (*See* D.E. No. 1).  On July 17, 2023, the SBA Defendants moved to dismiss the claims against them under Federal Rules of Civil Procedure 12(b)(1) (lack of subject matter jurisdiction) and 12(b)(6) (failure to state a claim). (Motion; *see also* D.E. No. 8-1 ("Mov. Br.")).  Plaintiffs opposed, and, in their opposition brief, cross-moved for remand to state court or transfer to the Federal Court of Claims.  (D.E. No. 9; D.E. No. 9-1 ("Opp.")).  The SBA Defendants replied (D.E. No. 10 ("Reply")), and Columbia filed a brief in opposition to Plaintiffs' cross-motion (D.E. No. 12 ("Columbia Opp.")).

## II.    LEGAL STANDARDS

### A.    Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) "attacks . . . the right of a plaintiff to be heard in Federal court."  *Cohen v. Kurtzman*, 45 F. Supp. 2d 423, 428 (D.N.J. 1999).  Federal courts have limited jurisdiction and are permitted to adjudicate cases and controversies only as permitted under Article III of the Constitution.  *See* U.S. Const. art. III, § 2. Unless affirmatively demonstrated, a federal court is presumed to lack subject matter jurisdiction. *See Phila. Fed'n of Teachers v. Ridge*, 150 F.3d 319, 323 (3d Cir. 1998) (citing *Renne v. Geary*, 501 U.S. 312, 316 (1991)).  The burden of demonstrating the existence of federal jurisdiction is on the party seeking to invoke it.  *See Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006)).  Under Federal

Rule of Civil Procedure 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

"A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the [C]ourt's subject matter jurisdiction." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). "Facial attacks . . . contest the sufficiency of the pleadings, and the trial court must accept the complaint's allegations as true." *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006). If the Rule 12(b)(1) motion is a facial attack, "the [C]ourt looks only at the allegations in the pleadings and does so in the light most favorable to the plaintiff." *Atkinson v. Pa. Shipbuilding Co.*, 473 F3d 506, 514 (3d Cir. 2007). "By contrast, on a factual attack to federal subject matter jurisdiction, courts may consider evidence outside the pleadings." *Descalzi v. U.S. Post Off.*, No. 19-12832, 2020 WL 907773, at *1 (D.N.J. Feb. 25, 2020) (citing *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)). Moreover, ""no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Petruska*, 462 F.3d at 302 n.3 (citation omitted). Here, the SBA Defendants do not cite any documents outside of the Amended Complaint, and thus appear to bring a facial attack on subject matter jurisdiction. The Court thus looks only at the allegations in the pleadings, in the light most favorable to Plaintiffs.

### B.    Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), a complaint may be dismissed, in whole or in part, for failure to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* On a 12(b)(6) motion, the Court accepts "all well-pleaded allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018). However, "threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" are all disregarded. *Id.* at 878–79 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)). The burden is on the moving party to show that the plaintiff has not stated a facially plausible claim. *See Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016).

A complaint must also meet the pleading requirements of Rule 8. Rule 8 requires that a complaint set forth the plaintiff's claims with enough specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and citations omitted). Thus, the complaint must contain "sufficient facts to put the proper defendants on notice so that they can frame an answer" to the plaintiff's allegations. *See Dist. Council 47 v. Bradley*, 795 F.2d 310, 315 (3d Cir. 1986). As part of this notice pleading, a complaint must plead enough facts to "raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Twombly*, 550 U.S. at 556.

## III.    DISCUSSION

### A.    Sovereign Immunity

SBA Defendants argue that they, as a federal agency and its officer, have sovereign immunity with respect to all of Plaintiffs' claims against them, alleging that no valid waiver exists for those claims. (Mov. Br. at 10). Plaintiffs in return argue that sovereign immunity for their claims has been waived by the "sue and be sued" clause applicable to the SBA, 15 U.S.C. § 634(b)(1). (Opp. at 11–15). For the reasons set forth below, the Court finds that the SBA

Defendants have sovereign immunity with respect to Plaintiffs' claims for injunctive relief, but not for Plaintiffs' contract-based claims for non-injunctive relief.

> ### i.   Applicability of the Federal Tort Claims Act and the Tucker Acts and Waiver of Sovereign Immunity

As a preliminary matter, SBA Defendants argue that "[t]o the extent Plaintiffs seek compensatory damages or contend they are bringing tort or contract claims, the Court lacks subject matter jurisdiction over Plaintiffs' claims against SBA." (Mov. Br. at 14). SBA Defendants assert that if such claims are being brought under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, Plaintiffs have failed to "allege that they exhausted their administrative remedies under the Federal Tort Claims Act, which is required before bringing such claims." (*Id.*). Further, SBA Defendants assert that "notwithstanding the sue-and-be-sued clause in [15 U.S.C. § 634(b)(1)], the Court lacks jurisdiction over any monetary claims because of the Tucker Act," 28 U.S.C. § 1491. (*Id.*). More specifically, SBA Defendants argue that "under the Tucker Act, the Court of Federal Claims has *exclusive* jurisdiction over non-tort claims for money damages of $10,000 or more against the United States," and the "Little Tucker Act," 28 U.S.C. § 1346(a), "only grants federal district courts concurrent jurisdiction over Tucker Act claims for money damages under $10,000 against the United States." (*Id.* at 15 (emphasis added)). Because Plaintiffs seek more than $10,000, Defendants argue jurisdiction in this Court, rather than the Court of Claims, is improper. (*Id.*).

In Opposition, Plaintiffs argue first that they are not bringing their claims under the FTCA or the Tucker Act/Little Tucker Act, (Opp. at 15), but rather via the "sue and be sued" clause applicable to the SBA, 15 U.S.C. § 634(b)(1) (*see id.* at 11–14 (discussing the applicability of § 634(b)(1) to Plaintiffs' unjust enrichment and equitable estoppel claims)). Accordingly, Plaintiffs argue that the jurisdictional bars in those Acts do not apply to this action. Second, Plaintiffs add

that even if they were bringing claims under the FTCA or the Tucker Acts, the Court would have jurisdiction. (*Id.* at 15–17). Regarding the FTCA, Plaintiffs allege that they exhausted their administrative remedies by filing numerous administrative appeals, though that information does not appear in the Amended Complaint. (*Id.* at 15–16). Regarding the Tucker Acts, Plaintiffs point out that it was the SBA Defendants who removed the action to this federal court, rather than leaving it in state court or removing it to the Court of Claims, seemingly arguing that Defendants should not now be able to challenge this Court's jurisdiction. (*Id.* at 17).

Sovereign immunity "is a jurisdictional bar which deprives federal courts of subject matter jurisdiction." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n.2 (3d Cir. 1996). "[T]he United States may not be sued without its consent[,] and . . . the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). Moreover, "[a] suit against a Federal agency is a suit against the United States for the purposes of sovereign immunity." *Hines v. Irvington Counseling Ctr.*, 933 F. Supp. 382, 388 (D.N.J. 1996); *see also F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). Thus, "[w]ithout a waiver of sovereign immunity, a court is without subject matter jurisdiction over claims against federal agencies . . . in their official capacities." *Treasurer of N.J. v. U.S. Dep't of Treasury*, 684 F.3d 382, 395 (3d Cir. 2012). A waiver of sovereign immunity must be express and unambiguous to confer subject matter jurisdiction on a court. *United States v. Bein*, 214 F.3d 408, 412 (3d Cir. 2000). A waiver of sovereign immunity must be strictly construed in favor of the sovereign, and the terms of the waiver define the extent of the court's jurisdiction. *Treasurer of N.J.*, 684 F.3d at 396.

The FTCA "operates as a limited waiver of the United States's sovereign immunity." *White-Squire v. U.S. Postal Serv.*, 592 F.3d 453, 456 (3d Cir. 2010) (citation omitted). "If the United States is sued in tort, . . . the FTCA provides the exclusive avenue to relief, if any can be

had." *Vanderklok v. United States*, 868 F.3d 189, 201 (3d Cir. 2017) (citation omitted).  The Tucker Act "waives the government's sovereign immunity for non-tort monetary claims against the United States founded upon 'any Act of Congress,' the Constitution, or contracts, but it vests jurisdiction only in the Court of Federal Claims." *Nederland Shipping Corp. v. United States*, 18 F.4th 116, 127–28 (3d Cir. 2021).  The "Little Tucker Act" gives federal district courts concurrent "jurisdiction over contract claims against the United States only when those claims do not exceed $10,000." *Boseski v. N. Arlington Mun.*, 621 F. App'x 131, 136 (3d Cir. 2015).

But the FTCA and the Tucker Acts are not the only relevant waivers of sovereign immunity in this case.  "Pursuant to the 'sue or be sued' clause of 15 U.S.C. § 634(b)(1), the Small Business Act waived sovereign immunity, in certain circumstances, to claims brought against [the SBA]." *United States v. Acorn Tech. Fund, L.P.*, No. 03-0070, 2004 U.S. Dist. LEXIS 16178, at \*26 (E.D. Pa. Aug. 12, 2004).  15 U.S.C. § 634(b)(1) states that

> In the performance of, and with respect to, the functions, powers, and duties vested in him by this Act the Administrator may . . . *sue and be sued* in any court of record of a State having general jurisdiction, or *in any United States district court*, and jurisdiction is conferred upon such district court to determine such controversies without regard to the amount in controversy; but no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Administrator or his property.

15 U.S.C. § 634(b)(1) (emphasis added).

The Court agrees with Plaintiffs: Plaintiffs are not bringing claims under the FTCA or the Tucker Acts, but rather various state law claims via § 634(b)(1).  First, Plaintiffs' asserted claims against the SBA Defendants clearly all arise from alleged contractual rights rather than sounding in tort.  All of Plaintiffs' claims against the SBA stem from an alleged violation of contractual duties, and thus they sound in contract, not tort.  *See Katz v. Ambit Northeast, LLC*, No. 20-1289, 2023 WL 2570147, at \*3 (D.N.J. Mar. 20, 2023) ("[T]he Supreme Court of New Jersey has

recognized that unjust enrichment can constitute a form of quasi-contractual liability."); *Shui v. Wang*, No. 23-2620, 2023 WL 8520778, at *5 n.3 (D.N.J. Dec. 8, 2023) ("By its very nature, the implied covenant of good faith and fair dealing sounds in contract, and a claim alleging breach of the covenant 'is not actionable in tort.'"); *Barriga v. Advanced Surgery Ctr. LLC & James R. Lee*, No. 1326-17, 2018 N.J. Super. Unpub. LEXIS 4554, at *15–16 (N.J. Sup. Ct. Mar. 15, 2018) (noting that claims of "(1) breach of contract, (2) unjust enrichment, (3) 'promissory note,' (4) equitable estoppel, and (5) breach of the covenant of good faith and fair dealing" sound in contract); *cf. Patil v. 10PM Curfew, LLC*, No. 23-0016, 2023 WL 6847027, at *10 (N.D. Ind. Oct. 17, 2023) ("To the extent that [the plaintiff's] declaratory judgment claims are based on the existence or non-existence of a contract, this 'is an action sounding in contract.'" (citation omitted)).  Plaintiffs' claims therefore do not arise under the FTCA.  *See Global Fin. Corp. v. United States*, 67 F. App'x 740, 743 (3d Cir. 2003) ("The FTCA concerns waiver of sovereign immunity for tortious acts committed by the Government and not for breach of contractual duties committed by the Government."); *Drive New Jersey Ins. Co. v. Nebolsky*, No. 14-3162, 2014 WL 7409906, at *4 (D.N.J. Dec. 31, 2014) (noting that if the plaintiff's "claims are contractual, then the claims can be brought directly against the USPS," rather than under the FTCA).  The SBA Defendants make no argument that Plaintiffs' claims sound in tort, and, as noted, it is clear that the claims are contractual in nature.  Thus, the SBA Defendants' argument that Plaintiffs' claims must satisfy the FTCA's requirements fails.

The Court is similarly unconvinced that Plaintiffs' claims must be brought under the Tucker Acts, and thus in the Court of Claims.  Despite the SBA Defendants' citations to out-of-circuit precedent indicating that the Court of Claims has *exclusive* jurisdiction over contract claims for over $10,000 against the United States under the Tucker Act (Mov. Br. at 15), the Third Circuit

has explicitly stated that "[n]ot all claims against the government . . . are reliant on the Tucker Act. Claims premised upon statutes that provide for independent causes of action and that waive the government's sovereign immunity need not be channeled through the Tucker Act." *Nederland*, 18 F.4th at 128; *see also Bowen v. Massachusetts*, 487 U.S. 879, 910 n.48 (1988) ("It is often assumed that the Claims Court has exclusive jurisdiction of Tucker Act claims for more than $10,000 . . . . That assumption is not based on any language in the Tucker Act granting such exclusive jurisdiction to the Claims Court.  Rather, that court's jurisdiction is 'exclusive' only to the extent that Congress has not granted any other court authority to hear the claims that may be decided by the Claims Court."); *Tritz v. U.S. Postal Serv.*, 721 F.3d 1133, 1137 (9th Cir. 2013) ("[N]othing in the language of the Tucker Act makes its grant of jurisdiction to the Court of Federal Claims exclusive for *all* contract claims over $10,000.").

Thus, it is clear that Plaintiffs' contractual claims need not be funneled through the Tucker Act if jurisdiction over those claims is vested in federal district courts by, and sovereign immunity for those claims is waived by, an independent source.  And, while the Third Circuit does not appear to have definitively addressed whether § 634(b)(1) can be such a source, other courts have concluded that § 634(b)(1) waives sovereign immunity for and vests jurisdiction in district courts over contractual claims against the SBA.[2]  *See In re Liberty Constr.*, 9 F.3d 800, 801 (9th Cir. 1993) (affirming prior ruling in *Munoz v. Small Bus. Administration* that "'in actions against the

---

[2]      While § 634(b)(1) explicitly waives immunity for suits against the SBA *Administrator*, rather than the SBA itself, cases discussing the provision's waiver of sovereign immunity do not distinguish between claims brought against the SBA and claims brought against the Administrator in her official capacity, and "lawsuits brought against employees in their official capacity 'represent only another way of pleading an action against an entity of which an officer is an agent,'" *Lewis v. Clarke*, 581 U.S. 155, 162 (2017) (citation omitted); *see also Gen. Ry. Signal Co. v. Corcoran*, 921 F.2d 700, 704 (7th Cir. 1991) ("The naming of the SBA administrator rather than the SBA as the party amenable to suit in a statute drafted to waive sovereign immunity cannot be imbued with special significance because, for sovereign immunity purposes, a suit against the Administrator is equivalent to a suit against the SBA.").  It is thus of no import for the sovereign immunity analysis whether the claims are brought against the SBA or against the SBA Administrator in her official capacity.

SBA for money damages in excess of $10,000, jurisdiction properly lies in the district court under 15 U.S.C. § 634(b)(1),' even though the Tucker Act . . . vested in the Court of Claims jurisdiction over contract claims against the government" (quoting *Munoz v. Small Business Admin.*, 644 F.2d 1361, 1364 (9th Cir. 1981)));[3] *United Penn Bank v. U.S.A. Small Bus. Admin.*, 603 F. Supp. 531, 532–33 (M.D. Pa. 1984); *Selected Risks Ins. Co. v. Kobelinski*, 421 F. Supp. 431, 434 (E.D. Pa. 1976) ("Cases . . . have held that subject matter jurisdiction exists in the district courts pursuant to [§ 634(b)(1)] for actions against the SBA where the amount in controversy exceeds $10,000 . . . . These decisions represent sound statutory construction and the Court would be inclined to follow them." (citations omitted)); *Tatum v. United States*, 465 F. App'x 313, 315 (5th Cir. 2012) ("Although tort claims against the SBA can proceed, if at all, only under the FTCA, § 634(b) constitutes a waiver of sovereign immunity with respect to breach of contract claims against the SBA."). As noted, Plaintiffs' claims sound in contract, rather than tort. Thus, § 634(b)(1) generally waives sovereign immunity for and vests jurisdiction in this Court to hear Plaintiffs' claims.

### ii. Injunctive Relief

SBA Defendants additionally argue that, even if Plaintiffs' claims implicate only § 634(b)(1), they are immune from Plaintiffs' claims for injunctive relief specifically, because § 634(b)(1) explicitly prohibits courts from ordering injunctive relief against the SBA. (Mov. Br. at 12–13; Reply at 4–5). Plaintiffs respond that "[t]he language of [§ 634] . . . only prohibits [injunctive] claims if they are against the 'Administrator', not the SBA itself." (Opp. at 14).

---

[3]     Defendants attempt to distinguish *Munoz* by stating that in that case, "SBA had a contractual relationship with the plaintiffs for a loan." (Reply at 6). However, nowhere in *Munoz* did the Ninth Circuit rely on a contractual relationship in finding that § 634(b)(1) waived sovereign immunity for the plaintiffs' claims; rather, the Ninth Circuit's holding in *Munoz*—reaffirmed in *In re Liberty Construction*—broadly stated that "actions against the SBA for money damages in excess of $10,000, jurisdiction properly lies in the district court under 15 U.S.C. § 634(b)(1)." *Munoz*, 644 F.2d at 1364.

The Court finds that § 634(b)(1) does not waive sovereign immunity for Plaintiffs' requests for injunctive relief.  § 634(b)(1) specifically states that "no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Administrator or his property." § 634(b)(1).  "There is a split among courts as to how completely Section 634(b)(1) bars injunctive relief, and the United States Court of Appeals for the Third Circuit does not appear to have addressed this particular issue." *Geisler v. Small Bus. Admin.*, No. 21-1693, 2022 WL 4018038, at *4 (W.D. Pa. Sept. 2, 2022) (citation omitted); *see also Springfield Hosp., Inc. v. Guzman*, 28 F.4th 403, 415 n.16 (2d Cir. 2022) (stating that "our sister circuits are split on Section 634(b)(1)'s reach" and collecting cases).  The Fourth and Fifth Circuits hold that § 634(b)(1) prohibits any and all injunctions.  *See Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1290 n.6 (5th Cir. 1994); *J.C. Driskill, Inc. v. Abdnor*, 901 F.2d 383, 386 (4th Cir. 1990).  On the other hand, the First Circuit has held that § 634(b)(1) bars injunctions which "interfere with [the SBA's] internal workings by judicial orders attaching agency funds," but is not a "bar to judicial review of agency actions that exceed agency authority where the remedies would not interfere with internal agency operations." *Ulstein Maritime, Ltd. v. United States*, 833 F.2d 1052, 1057 (1st Cir. 1987).

The Court will follow the approach of the Fourth and Fifth Circuits and conclude that § 634(b)(1) prohibits all forms of injunctive relief against the SBA.  First, nothing in the text of § 634(b)(1) supports the First Circuit's reading of the statute—the provision states in absolute terms that "*no* attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued," § 634(b)(1) (emphasis added), and says nothing about interfering with agency operations. Second, "*Ulstein* appears to be in the minority in concluding that injunctive relief against the SBA may be possible in some circumstances." *Geisler*, 2022 WL 4018038 at *4 (citation omitted); *see also Brennan v. United States*, No. 20-0505, 2020 WL 3980001, at *6 (E.D. Ark. July 13, 2020)

(noting that "*Ulstein Maritime*, to the extent it purports to authorize federal district courts to award injunctive relief against the SBA, is against the clear weight of authority" and collecting cases). Finally, other courts in this circuit have concluded that § 634(b)(1) is an absolute bar to injunctive relief against the SBA.  *See Geisler*, 2022 WL 4018038 at *4; *Palmer v. Weaver*, 512 F. Supp. 281, 285 (E.D. Pa. 1981) ("Federal courts have consistently held that this provision [Section 634(b)(1)] precludes the issuance of an injunction against the Administrator because the court has no subject matter jurisdiction and therefore no power to order such relief.").

The Court is not persuaded by Plaintiffs' argument that the language of § 634(b)(1) only prohibits claims for injunctive relief "if they are against the 'Administrator,' not the SBA itself." (Opp. at 14).  As noted previously,  "lawsuits brought against employees in their official capacity 'represent only another way of pleading an action against an entity of which an officer is an agent,'" *Lewis*, 581 U.S. at 162 (citation omitted), and "[t]he naming of the SBA administrator rather than the SBA as the party amenable to suit in a statute drafted to waive sovereign immunity cannot be imbued with special significance because, for sovereign immunity purposes, a suit against the Administrator is equivalent to a suit against the SBA," *Corcoran*, 921 F.2d at 704.  And indeed, if § 634(b)(1) is not applicable to Plaintiffs' claims against the SBA, then there is no applicable waiver of sovereign immunity to which Plaintiffs can point, and all of their claims are barred by sovereign immunity in their entirety.  Plaintiffs have explicitly denied bringing their claims under the Tucker Act or the FTCA, and identify no source other than § 634(b)(1) which could constitute a waiver of the SBA's sovereign immunity for their claims.  Thus, if Plaintiffs' argument were correct, all of their claims against the SBA would need be dismissed due to sovereign immunity.

Plaintiffs' claims for injunctive relief are thus dismissed *with prejudice*.

17

### iii.        Declaratory Relief

Regarding Plaintiffs' claim for declaratory relief, SBA Defendants argue that "[t]he essence of Plaintiffs' requested [declaratory] relief is equitable," and is therefore barred by the ban on injunctive relief in § 634(b)(1).  (Mov. Br. at 12–13).  Thus, SBA Defendants argue, they have sovereign immunity with respect to the declaratory relief claim.  (*Id.*).  Plaintiffs do not appear to respond to this argument.

"Where a plaintiff frames his claim [against the SBA] as one for declaratory relief but really seeks the equivalent of injunctive relief, the court is without authority to grant it and the claim must be dismissed." *Stone Ent., Inc. v. Geftman*, No. 98-6123, 1998 WL 855499, at *2 (E.D. Pa. Dec. 9, 1998); *see also Palmer*, 512 F. Supp. at 285 (noting that where an action against the SBA "framed by plaintiff as one for declaratory relief under § 634(b)(1) is equivalent to the injunctive relief barred by the statute, it has been dismissed" and collecting cases).

The Court finds that Plaintiffs' request for declaratory relief is in effect a request for injunctive relief and is thus barred under § 634(b)(1).  In their request for declaratory relief, Plaintiffs explicitly seek "[a] declaratory judgment stating that Plaintiffs' obligations with respect to the SBA loan and guarantee are properly terminated and should be discharged."  (Am. Compl. at 18).  While Plaintiffs frame this as a request for declaratory relief, it clearly "seeks the equivalent of injunctive relief," *Stone*, 1998 WL 855499 at *2, as it in effect seeks to compel the SBA to "discharge" Plaintiffs' contractual obligations.  *See id.* ("A declaration that plaintiffs are no longer legally obligated to make payments to the SBA under the mortgages or guarantees would effectively preclude the agency from enforcing these obligations and would thus be the equivalent of injunctive relief." (citation omitted)); *Mar v. Kleppe*, 520 F.2d 867, 869 (10th Cir. 1975) (finding request for order releasing plaintiffs from liability to the SBA as guarantors on lease

agreement effectively sought to enjoin the SBA from enforcing guarantees and thus sought injunctive relief).  Thus, the SBA Defendants have sovereign immunity with respect to Plaintiffs' declaratory judgment claim, and the claim must be dismissed *with prejudice*.[4]

### iv. Equitable Estoppel

SBA Defendants additionally argue that Plaintiffs' claim for equitable estoppel in reality constitutes a request for injunctive relief that is barred by sovereign immunity.  (Reply at 9).  In their Amended Complaint, Plaintiffs assert that "[t]he SBA engaged in conduct that induced reliance by the Plaintiffs," including "notifying the Plaintiffs that the matter against them was closed on January 15, 2016 and February 22, 2016 when the matter had not been resolved."  (Am. Compl. ¶¶ 73–74).  Plaintiffs clarify in their opposition that "because the SBA is attempting to enforce its lien against the Plaintiffs' real property, it is clear that the SBA is attempting to enforce rights to which it believes it is entitled.  Plaintiffs' assertion of the doctrine of equitable estoppel is a means to seek an order preventing the SBA in asserting that lien."  (Opp. at 23).  As this is clearly a request for injunctive relief, and injunctive relief against the SBA is barred by sovereign immunity, Plaintiffs' claim for equitable estoppel must be dismissed *with prejudice*.

### v. Conclusion

In sum, the Court finds that § 634(b)(1) waives sovereign immunity with regard to Plaintiffs' non-injunctive requests for relief—i.e., Plaintiffs' requests for compensatory damages and restitution for their breach of the implied covenant of good faith and fair dealing and unjust enrichment claims against the SBA.  (*See* Am. Compl. ¶¶ 66 & 71 (requesting restitution and

---

[4]     Because the Court find that SBA Defendants are immune from Plaintiffs' claim for declaratory relief, the Court declines to address SBA Defendant's additional argument that the Court should abstain from deciding this claim pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a).  (Mov. Br. at 13–14).

compensatory damages for these claims)).[5]   However, Plaintiffs' requests for various forms of injunctive relief—including "[r]elease of the Promissory Note signed by the Plaintiffs"; "[r]elease and discharge of the mortgage on 134 Grove Street, Elmwood Park, New Jersey securing the April 11, 2008 Promissory Note"; "[r]elease and discharge of the guarantee securing the April 11, 2008 Promissory Note"; and "[r]elease and discharge of the security agreement, UCC or other lien securing the April 11, 2008 Promissory Note"  (Am. Compl. ¶¶ 66–83)—are not included within § 634(b)(1)'s waiver.[6]   These requests are thus barred by sovereign immunity and must therefore be dismissed.  As there is no way for Plaintiffs to remedy this flaw in their requests for injunctive relief, the dismissal is *with prejudice*.  Finally, Plaintiffs' claims for declaratory relief and equitable estoppel are more properly characterized as requests for injunctive relief, and are thus also barred by sovereign immunity.  They are likewise dismissed *with prejudice*.

---

[5]       It is true that at least two district courts in this circuit have indicated that the SBA is immune from unjust enrichment claims. *See Conboy v. U.S. Small Bus. Admin.*, No. 18-0224, 2020 WL 1244352, at *8 (M.D. Pa. Mar. 16, 2020); *Furman v. U.S. Small Bus. Admin.*, No. 17-3175, 2017 WL 4553413, at *2 (E.D. Pa. Oct. 12, 2017).  However, neither of those cases directly addressed the import of § 634(b)(1) or the cases, described above, which indicate that § 634(b)(1) generally waives sovereign immunity in regard to the SBA.  In addition, other cases indicate that similar "sue and be sued" clauses waive sovereign immunity for unjust enrichment claims against federal agencies. *See, e.g.*, *Branch v. Fed. Deposit Ins. Corp.*, 825 F. Supp. 384, 421 n.41 (D. Mass. 1993) (finding sovereign immunity waived for unjust enrichment claim against the Federal Deposit Insurance Corporation through the "general waiver of sovereign immunity under 12 U.S.C. § 1819(a)."); *Bor-Son Bldg. Corp. v. Heller*, 572 F.2d 174, 178–79 (8th Cir. 1978) (finding sovereign immunity waived for, *inter alia*, unjust enrichment claims against the Secretary of Housing and Urban Development via "sue and be sued" clause in 12 U.S.C. § 1702); *Van-Tex, Inc. v. Pierce*, 703 F.2d 891, 895 (5th Cir. 1983) (acknowledging viability of unjust enrichment claim against the Department of Housing and Urban Development due to "sue and be sued" clause); *S.S. Silverblatt, Inc. v. East Harlem Pilot Block*, 608 F.2d 28, 36 (2d Cir. 1979) (holding that "sue and be sued" clause waived immunity for claim based on a theory of "quantum meruit based on unjust enrichment").  As the Supreme Court has dictated that "sue and be sued" clauses are to be "liberally construed," *Franchise Tax Bd. v. U.S. Postal Serv.*, 467 U.S. 512, 520 (1984), the Court finds *Conboy* and *Furman* unpersuasive on this point.

[6]       Plaintiffs make these requests in their breach of the implied covenant of good faith and fair dealing, unjust enrichment, equitable estoppel, and declaratory judgment claims against the SBA Defendants.  (Am. Compl. at 15 – 18).

### B.      Failure to State a Claim

In addition to arguing that they have sovereign immunity, the SBA Defendants argue that all of Plaintiffs' claims fail under Rule 12(b)(6) for failure to state a claim. (Mov. Br. at 16–22). The Court addresses each remaining claim in turn.

### i.      Breach of the Implied Covenant of Good Faith and Fair Dealing

In their Complaint, Plaintiffs allege that the SBA Defendants breached the implied covenant of good faith and fair dealing, stating that the "Promissory Note entered into by and between the Plaintiffs and the SBA contained implied covenants of good faith and fair dealing which bound the SBA to act, at all times, in good faith in complying with and discharging its obligations," and that the conduct described in the Complaint "constitutes a breach of the covenant of good faith and fair dealing, contrary to the laws of the State of New Jersey." (Am. Compl. ¶¶ 64–65). Defendants argue that to the extent the Court finds that the SBA has waived sovereign immunity with respect to this claim, it nonetheless fails under Rule 12(b)(6). More specifically, the SBA Defendants argue that the claim fails because Plaintiffs have failed to allege a contract between themselves and the SBA, and "[w]ithout any underlying contract, SBA necessarily could not have breached any implied covenant." (Mov. Br. at 16–17). Further, Defendants argue, Plaintiffs "do not allege any 'bad faith or dishonesty' by SBA, which is an element of a claim for breach of the duty of good faith and fair dealing under New Jersey law." (*Id.* at 17). Plaintiffs respond that "the relationship between the Plaintiffs and the SBA should be considered one of [a] third-party beneficiary" and "[t]he Plaintiffs clearly claimed in their Amended Complaint that the SBA's representative provided false and misleading information to the Plaintiffs upon which they relied to their significant detriment." (Opp. at 21–22).

"All contracts, under New Jersey law, include an implied covenant that the parties to the contract will act in good faith." *Tredo v. Ocwen Loan Servicing, LLC*, No. 14-3013, 2014 WL 5092741, at *6 (D.N.J. Oct. 10, 2014) (citing *Sons of Thunder, Inc. v. Borden, Inc.*, 148 N.J. 396, 420 (1997)).  The implied covenant of good faith and fair dealing "mandates that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Id.* (quoting *Seidenberg v. Summit Bank*, 348 N.J. Super. 243, 254 (N.J. Super. Ct. App. Div. 2002)) (internal quotation marks omitted).  "[B]ad motive or intention is essential" to the good faith and fair dealing claim, and such a claim "should not be permitted to be advanced in the abstract and absent improper motive." *Fabbro v. DRX Urgent Care, LLC*, 616 F. App'x 485, 487–88 (3d Cir. 2015) (quoting *Elliott & Frantz, Inc. v. Ingersoll-Rand Co.*, 457 F.3d 312, 329 (3d Cir. 2006)) (internal quotation marks omitted).

The Court agrees with SBA Defendants: Plaintiffs have failed to state a claim for breach of the implied covenant of good faith and fair dealing.  Nowhere in the Amended Complaint do Plaintiffs allege a valid contract between them and the SBA—they allege only that the SBA was a guarantor of their contract with Columbia, which is insufficient to establish a direct contractual relationship between Plaintiffs and the SBA.  *Cf. Furman v. U.S. Small Bus. Admin.*, No. 17-3175, 2017 WL 4553413, at *2 (E.D. Pa. Oct. 12, 2017) ("The Small Business Administration's guarantee to a lender does not create privity between the Small Business Administration and the borrower."); *see also Peter v. Vitran Express, Inc.*, 2013 WL 6859843, at *2 (D.N.J. Dec. 30, 2013) ("[A] plaintiff cannot allege a breach of an implied covenant of good faith and fair dealing in the absence of an underlying contract.").  Plaintiffs argue that the SBA can be held liable for breach of the implied covenant of good faith and fair dealing as a "third-party beneficiary" of the contract between Plaintiffs and Columbia.  (Opp. at 21–22).  However, even if the Court were to

consider the SBA a third-party beneficiary, Plaintiffs provide no support for their proposition that an implied covenant of good faith and fair dealing claim may be brought against a third-party beneficiary, and indeed case law indicates that it may not.  *See Kamdem-Ouaffo v. Task Mgmt. Inc.*, No. 17-7506, 2018 WL 3360762, at *19 (D.N.J. July 9, 2018) ("It appears Plaintiff is resting the breach of contract claim against Campbell Soup on its position as an apparent 'beneficiary' of the contract.  However, Campbell Soup remains a nonparty to that contract, and it is axiomatic that one cannot breach a contract he is not a party to.  The breach of contract claim against Campbell Soup must be dismissed, as must the claim of breach of the implied covenant of good faith and fair dealing."); *Noye v. Hoffmann–La Roche Inc.*, 570 A.2d 12, 14 (N.J. Sup. Ct. App. Div. 1990) ("In the absence of a contract, there can be no breach of an implied covenant of good faith and fair dealing." (citation omitted)).  Because Plaintiffs' implied covenant of good faith and fair dealing claim against the SBA Defendants is premised on the Columbia contract to which the SBA is not a party, that claim is dismissed.  As there is no way for Plaintiffs to remedy this flaw in their claim for breach of the covenant of good faith and fair dealing, the claim is dismissed *with prejudice*.[7]

### ii.      Unjust Enrichment

Defendants argue that Plaintiffs' unjust enrichment claim must also be dismissed under Rule 12(b)(6) for failure to state a claim.  (Mov. Br. at 18–20).  Specifically, SBA Defendants argue that Plaintiffs' unjust enrichment claim is deficient because Plaintiffs "do not allege any direct relationship between themselves and SBA, let alone any benefit that they conferred upon SBA that would be unjust for SBA to retain."  (*Id.* at 20).  Plaintiffs respond that "Plaintiffs[']

---

[7]       In addition, Plaintiffs have failed to allege improper motive or intention.  While Plaintiffs assert that they "clearly claimed in their Amended Complaint that the SBA's representative provided false and misleading information to the Plaintiffs upon which they relied to their significant detriment" (Opp. at 22), nowhere in the Amended Complaint do Plaintiffs allege that such misinformation was intentional and compelled by a bad motivation.  This is fatal to their claim.  *Fabbro*, 616 F. App'x at 487–88.

(Amended) Complaint shows that the SBA has asserted a judgment against the Plaintiffs and the Plaintiffs believe that the assertion of such judgment is in violation of its agreement with Columbia. Once the parties engage in discovery, the facts will demonstrate that the SBA should not be entitled to that benefit."  (Opp. at 20–21).  Plaintiffs add:

> The SBA claims that the Plaintiffs have no contract with the Plaintiffs, but fail to mention that the Promissory Note that was signed by the Plaintiffs in 2008 purports to create a relationship between the Plaintiffs and Columbia Bank which is guaranteed by the SBA.  The SBA is now, effectively, standing in the place of Columbia Bank and asserting a judgment against the Plaintiffs to which Columbia has no right to continue to assert.

(*Id.* at 21).

The Court agrees with the SBA Defendants: Plaintiffs' unjust enrichment claim fails to state a claim under Rule 12(b)(6).  Under New Jersey law,

> To prove a claim for unjust enrichment, a party must demonstrate that the opposing party received a benefit and that retention of that benefit without payment would be unjust.  That quasi-contract doctrine also requires that plaintiff show that it expected renumeration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of renumeration enriched defendant beyond its contractual rights.

*Thieme v. Aucoin-Thieme*, 151 A.3d 545, 557 (N.J. 2016) (citations and quotation marks omitted). Thus, to establish an unjust enrichment claim, "a plaintiff must allege 'both that defendant received a benefit and that retention of that benefit without payment would be unjust.'"  *Adamson v. Ortho-McNeil Pharm.*, Inc., 463 F. Supp. 2d 496, 505 (D.N.J. 2006) (quoting *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (N.J. 1994)).

Nowhere in the Amended Complaint do Plaintiffs allege a benefit received by the SBA or that Plaintiffs expected remuneration at the time the benefit was conferred.  The Amended Complaint merely states that "[t]he SBA will receive a benefit unless Plaintiffs are released from

the aforementioned mortgage and related liens on their home," without describing what that benefit could be.  (Am. Compl. ¶ 68).  This is too vague and conclusory to sustain an unjust enrichment claim.[8]  *See  In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, No. 19-2904, 2021 WL 5937742, at *18 (D.N.J. Dec. 16, 2021) (holding that the plaintiffs failed to state a claim for unjust enrichment where "beyond vague allegations that [d]efendants collected information for 'commercial gain,' the [complaint] contain[s] no facts showing how [d]efendants reaped monetary benefits or otherwise profited from [p]laintiffs' Personal Information" (internal citations omitted)); *State Dev. & Inv. Co. Zhonglu Fruit Juice Co. v. Haisheng Int'l, Inc.*, No. 14-512, 2015 WL 3385515, at *5 (D.N.J. May 26, 2015) (noting that "[t]he problem with plaintiff's unjust enrichment claim is that plaintiff conclusorily pleads that 'defendants' 'gained a benefit' by the misappropriation of plaintiff's trade secrets, and it is 'unjust for defendants to retain the benefit they have gained at plaintiff's expense,'" and that even accepting the plaintiff's allegations, "it is entirely a mystery as to what benefits [the defendant] gained by its involvement in the scheme," and concluding that "simply pleading that [the defendant] was unjustly benefited by [the] alleged theft of plaintiff's trade secrets is insufficient to state an unjust enrichment claim"); *Swift v. Pandey*, No. 13-0650, 2016 U.S. Dist. LEXIS 105957, at *9 (D.N.J. Aug. 10, 2016) (noting in regard to unjust enrichment claims that "vague and conclusory allegations do not pass muster").  Thus, Plaintiffs' unjust enrichment claim, to the extent it seeks non-injunctive relief, is dismissed *without prejudice.*

---

[8]      As noted, in their opposition brief, Plaintiffs assert that the Amended Complaint "shows that the SBA has asserted a judgment against the Plaintiffs and the Plaintiffs believe that the assertion of such judgment is in violation of its agreement with Columbia.  Once the parties engage in discovery, the facts will demonstrate that the SBA should not be entitled to that benefit, but the judgment should be vacated in light of the Plaintiffs' agreement with Columbia." (Opp. at 20–21).  But Plaintiffs provide no citation to the Amended Complaint for this proposition, and the Court cannot locate such allegations in the Amended Complaint.  And even if such an allegation were in the Amended Complaint, it would still be too vague and conclusory to demonstrate a benefit received by the SBA.  *See In re Am. Med. Collection Agency*, 2021 WL 5937742 at *18.

### C.    Subject Matter Jurisdiction Under § 1367

"[F]ederal courts have an independent obligation to address issues of subject matter jurisdiction *sua sponte* and may do so at any stage of the litigation." *Abuhouran v. KaiserKane, Inc.*, No. 10-6609, 2012 WL 4027416, at *2 (D.N.J. Sept. 12, 2012).  Under 28 U.S.C. § 1367, "[w]hen a court has dismissed all claims over which it had original federal-question jurisdiction, it has the discretion to decline to exercise supplemental jurisdiction over the remaining state law claims"; the court in such a case may dismiss the matter or choose to remand the remaining state law claims back to state court.  *See id.*; 28 U.S.C. § 1367(c)(3); *Whittaker v. CCIS N. of Phila.*, No. 10-1095, 2010 WL 1644492, at *2 (E.D. Pa. Apr. 22, 2010) ("Where a case has been removed from state court to federal court on the basis of federal question jurisdiction, the United States Supreme Court has recognized that a district court retains the discretion to remand that matter back to state court when all federal law claims have been dropped or dismissed from the action and only pendent state law claims remain.").  In the Third Circuit, where the federal claims that gave the basis for original jurisdiction have been dismissed, a "district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)).  When "the case is nowhere close to trial, remand is the proper course." *Del Turco v. Randolph Twp. Police Dep't*, No. 18-5086, 2020 WL 999210, at *14 (D.N.J. Mar. 2, 2020).

The Court independently concludes that remand of this case to state court is appropriate here.  All of the federal claims in this matter (those against the SBA Defendants) have been dismissed, leaving only Plaintiffs' state-law claims against Columbia.  Because Plaintiffs and

Columbia are not diverse,[9] the only potential basis for this Court's jurisdiction over Plaintiffs' remaining claims is supplemental jurisdiction pursuant to 28 U.S.C. § 1367, which is discretionary. *See Monk v. New Jersey*, No. 14-1399, 2014 WL 4931309, at *3 (D.N.J. Oct. 2, 2014).

Here, remand appears the appropriate course, rather than retaining supplemental jurisdiction under § 1367. No federal claims remain, and Plaintiffs initially filed this action in state court, and indeed requested remand in the event the Court found it did not have subject matter jurisdiction over this matter (Opp. at 18–19). Further, the case is at the pleading stage, rather than close to trial. The Court cannot discern any significant considerations of fairness or economy that would weigh in favor of retaining jurisdiction here. Thus, the Court will remand Plaintiffs' state law claims against Columbia. However, because not all of Plaintiffs' federal claims were dismissed with prejudice, the possibility remains that Plaintiffs could amend their Amended Complaint to state a viable federal claim. The remand order shall thus be held in abeyance for 14 days, to accommodate the filing of a second amended complaint. *See Del Turco*, 2020 WL 999210 at *15 (dismissing federal claims, ordering remand of remaining state law claims, and holding remand order in abeyance pending potential motion to amend); *Baldini v. Sussex Cty. Charter Sch. for Tech.*, No. 17-5547, 2018 U.S. Dist. LEXIS 104082, at *13–14 (D.N.J. June 19, 2018) (dismissing federal claims and giving the plaintiffs a limited time period to amend their complaint to reassert federal claims before remanding); *Wise v. Estes*, No. 10-0481, 2010 WL 2757273, at *7 (D.N.J. July 6, 2010) ("Plaintiffs shall have fourteen (14) days to file an amended complaint curing the deficiencies in the federal claims. If an amendment is not filed within this time, Plaintiffs' [federal] claims shall be dismissed with prejudice, and the Court shall enter an Order remanding the remaining state law claims to the Superior Court of New Jersey.").

---

[9]     The Amended Complaint identifies Plaintiffs and Columbia as both domiciled in New Jersey. (Am. Compl. at 1–2).

**D.      Cross-Motion to Remand or Transfer to the Federal Court of Claims**

Finally, in their opposition, Plaintiffs request (with little explanation) that "[i]n the event that the court determines that it does not possess subject matter jurisdiction, this matter should not be dismissed, but should be transferred to the Federal Court of Claims or remanded to the State Court from which it was removed."  (Opp. at 18).  Plaintiffs cite 28 U.S.C. § 1447[10] for the proposition that the Court should remand back to state court if it determines it lacks subject matter jurisdiction over the case, and 28 U.S.C. § 1631[11] for the proposition that the Court should transfer the action to the Federal Court of Claims if the Court determines jurisdiction is lacking.  Columbia opposes[12] Plaintiffs' request for transfer, arguing that "the Court cannot transfer the claims against defendant [Columbia] to the Court of Federal Claims because the Court of Federal Claims lacks jurisdiction over Columbia as a private party and, in any event, Plaintiffs have not carried their burden of demonstrating that Columbia should be made to defend against Plaintiffs' New Jersey-based common law claims in Washington, D.C."  (Columbia Opp. at 1).  No Defendants have explicitly opposed Plaintiffs' request for remand.

First, the Court denies Plaintiffs' motion for remand as moot.  Plaintiffs request remand "[i]n the event that the court determines that it does not possess subject matter jurisdiction," in the alternative to dismissing the entire matter.  (Opp. at 18).  Because the Court has already

---

[10]      28 U.S.C. § 1447(c) states: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c).

[11]      28 U.S.C. § 1631 states that "[w]henever a civil action is filed in a court" which lacks jurisdiction, "the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed."

[12]      The SBA Defendants do not appear to have explicitly responded to the request to transfer this matter, beyond stating that "[w]ith respect to Plaintiffs' argument that the Court could construe their claims as being brought under the Tucker Act and either retain it or transfer it to the Court of Federal Claims, Plaintiffs ignore that they have not alleged any privity for a contract claim (and they concede their claims are over $10,000, which would mean such claims would have to be brought in the Court of Federal Claims)."  (Reply at 7).

independently concluded that remand is appropriate, provided Plaintiffs do not reassert a federal claim, Plaintiffs' request is moot. *Brahamsha v. Supercell OY*, No. 16-8440, 2017 WL 3037382, at *7 (D.N.J. July 17, 2017) ("Because the Court, in the fulfillment of its independent obligation to determine its subject matter jurisdiction, and in its consideration of the arguments of the parties on Defendant's motion to dismiss under Rule 12(b)(1), has already determined that § 1447(c) compels remand in this case, Plaintiff's separate 'motion' to remand . . . is denied as moot—the requested relief having already been granted.").  Further, the Court has not dismissed all claims based on lack of subject matter jurisdiction, and has not dismissed the entire matter, which is the premise of Plaintiffs' remand request, making the request doubly moot.

Second, the Court denies Plaintiffs' request for transfer to the Federal Court of Claims. While under 28 U.S.C. § 1631, "[w]henever a civil action is filed in a court" which lacks jurisdiction, "the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed," Plaintiffs provide no argument as to how jurisdiction would be proper in the Federal Court of Claims.  Thus, the Court declines Plaintiffs' request for transfer.[13]

## IV.    CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is **GRANTED.**  Plaintiffs' claims against the SBA Defendants are dismissed *with prejudice*, except their claim for unjust enrichment (to the extent it seeks non-injunctive relief), which is dismissed *without prejudice*. Plaintiffs' motion for remand, or in the alternative, transfer to the Federal Court of Claims is **DENIED**.  Plaintiffs shall have 14 days from the date of this opinion to amend the Amended

---

[13]    Though they do not so specify, it appears that Plaintiffs request transfer to the Court of Claims in the event the Court agreed with the SBA Defendants that Plaintiffs' claims must be brought in the Court of Claims via the Tucker Act.  However, the Court has rejected that argument.

Complaint to assert a viable federal claim.  If Plaintiffs do not so amend within 14 days, or if Plaintiffs inform the Court in writing before the 14 days are up that they will not amend, the Court will remand this matter to the Superior Court of New Jersey.  An appropriate order follows.

Dated: March 28, 2024

Esther Salas, U.S.D.J.